## THE GRECIAN MONARCH.

### McMORRAN *v.* THE GRECIAN MONARCH.

*(District Court, D. New Jersey.* October 22, 1887.)

ADMIRALTY—PERSONAL INJURIES—EXCESSIVE DAMAGES.

In a libel against a ship it appeared that libelant fell through an open hatchway, receiving severe wounds, and was seriously jarred, and thereafter was unconscious at intervals for two or three days, and after three months in the hospital was discharged with his wounds healed, although he complained of a lame back. Four years later he swore that he still felt the effect, but was uncorroborated as to this by his own medical experts, while the defendant's witnesses testified that he showed no signs of existing or permanent injury. *Held,* that the amount of damages given should be reduced from $3,638 to $1,200.

In Admiralty. Exceptions to commissioner's report.
*Joseph F. Randolph,* for libelant.
*Butler, Stillman & Hubbard,* for respondents.

WALES, J. The only exception entitled to serious consideration is the third one, which is taken to the amount of damages ($3,638) as excessive, and not warranted by the evidence. The question, argued by claimant's proctor, of the liability of the owners for any permanent injury which may have been received by the libelant in consequence of the defective or negligent equipment of the ship, has been settled, so far as this court

is concerned, by the interlocutory decree in favor of the libelant, and the only inquiry to which attention can now be given is whether the commissioner has erred in allowing the libelant greater damages than he is fairly entitled to. The libelant fell through an open hatchway which, when not in use for loading or discharging cargo, had always been protected before that time, and had been left unprotected without his knowledge. He fell a distance of 25 or 30 feet, receiving severe cuts on his head and leg, and being badly bruised and shaken up. Another one of the crew fell through the same hatchway, an hour after the libelant, and was killed. The libelant did not suffer a fracture of the skull or limb, but was unconscious, at intervals, for two or three days, and after three months treatment at the hospital was discharged, with his wounds apparently healed, although he complained of a pain in his back, which has continued ever since, according to his statement, and still continues, after the lapse of four years, being worse in damp weather, often accompanied by sleeplessness and excessive fatigue, and preventing him from doing any hard or continuous work.

I have carefully examined the testimony in relation to the nature and extent of the libelant's injuries to ascertain how long he had been disabled for work requiring daily bodily exertion, and whether such disability now exists and is likely to be permanent. McMorran's own representation of his condition must be taken with great caution, being unsupported by other testimony. The three medical gentlemen, and they were the only witnesses produced by the libelant, who were examined in support of the theory of an existing and permanent disability, could not discover any symptoms of chronic debility or soreness. The wounds caused by the cuts had entirely healed, and there were no superficial evidences of spinal trouble. These witnesses speak in answer to hypothetical questions, and neither confirm nor contradict the testimony of the libelant. The expert surgical testimony on the other side is almost conclusive that the libelant was not, as late as the month of November, 1885, —more than two and a half years subsequent to the accident,—permanently disabled. On a physical examination no objective symptoms of disease or soreness of the spine or back were discovered, and he was subjected to experimental tests which would have revealed any latent soreness or disease of those parts, had either existed.

I am led to the conclusion, therefore, that while the testimony does not sustain the finding of the commissioner to its fullest extent, there is still sufficient proof that the libelant could not have so far recovered from his hurts, on leaving the hospital, as to be able at once to return to his work, or to perform any hard and protracted labor. He must have been disabled for a considerable length of time, and it is only just that he should be allowed a liberal compensation for the loss of wages which he might have earned, and of which he was deprived by the negligence of the claimants. But, aside from McMorran's own testimony, there is nothing in the depositions which indicates that at the time they were taken—nearly three years after the accident—he was suffering from the effects of his fall; and, as the commissioner has not given any reason

for his judgment, or stated the mode of calculation by which he assessed the damages, I am unable to confirm the report unconditionally. Twelve hundred dollars will be an ample allowance for the loss of the libelant during the time he was actually disabled, and with his consent a decree will be entered for that amount, with costs; otherwise, the third exception will be sustained.